The essential issue before this court on appeal is does the incontestability clause in a life insurance policy, as required by Minnesota statute, bar application of the misstatement of age provision in the policy, as also required by the same statute, if application of the misstatement provision results in zero benefits paid? The trial court said yes. Relying primarily on a 2007 North Dakota or Northern District of Illinois case, the logic of the trial court was by saying there are zero benefits if you apply the misstatement of age provision, you're basically nullifying the contract, cancelling it out, rescinding it, and therefore the incontestability provision, which bars contesting the policy after two years, applies. And in doing so, the lower court granted summary judgment against Farmers New World Life in favor of plaintiff and denied our summary judgment motion on the same thing. And we contend the court erred, and we brought it up on appeal, because the court's order essentially rewrites not only the insurance contract, the policy, by adding this exception to the misstatement of age provision, and in doing so, essentially rewrites the Minnesota statute, which specifies the misstatement of age provision that must be in the policy. And if the age, if her age was the older age, the 1933 date of birth, would she have been eligible for that policy at all? No. And that's also required basically as a result of Minnesota law. So is that sort of the nub of why the district court said it's not valid versus making a, I guess, substantive distinction between saying a contract's not valid or a policy's not valid versus, well, you just zeroed out. You just aren't entitled to anything under the policy you have. I believe that's what the court was looking at, because had she said, we know when she was born in 1933, the insurance agent would have said, well, then we cannot sell you this term policy. And basically, it's under Minnesota law, the magic age is 60 for term policy for various convoluted reasons. So we would not have sold her or issued her that policy. The fact is, we did. We did issue. There was a meeting of minds, a contract formation, because we thought she was born in 1943, as she represented. So we issued her the policy, and there was a contract. When we found out, when the company found out later of the older birth year, 1933, it then applied the misstatement of age provision. And under this contract, as it exists, you're entitled to zero benefits. And then they refunded the premiums. So it's your position that the policy's not invalid. The policy is a good policy. Correct. And we applied. We would not have sold it to her, had we known, agreed. But we did issue it to her based on 1943 birth date. We're not rescinding it because of a misrep. It's a misrepresentation case, but based on the misstatement of age provision, as required by Minnesota law, we applied that, and she was entitled to zero benefits. And so we applied a provision of the contract. We stood by the contract and applied that provision. So it's not a rescission. It's not a nullification of the contract. Under the terms of this contract, you are entitled to zero benefits. But you did offer to refund the premium. And then I believe you said, well, we'll give her a little more because she would have been eligible for some other policy. That is a confusion in the court's record, in the court's order. We submitted an affidavit from our actuary explaining why underneath this Minnesota law, she would not, with the 1933 date, we would not have sold her this policy, had we known. The only, and to show the difference, what we said was the only policy she would have been eligible for, we would have sold her for at her birth year, was a $10,000 whole life policy. And in fact, again, that's due to the law. In fact, the unity policy that she bought four years after our policy and gave her right birth date, that was a whole life policy. Basically, when you get over 60, when you're 60 or over. So what was the mistake? I'm sorry. Pardon? What was the mistake in the district court? The district court thought we actually offered, we said, court, we offered her this other policy in lieu of it. We never did. I see. We never did. But you did offer the refund of the premiums. Correct. In our case law, that has been done before. In fact, in the Amica case that the trial court references, they do note a 1970 North Carolina case where applied a misstatement of age, the insurer was not eligible for benefits, and so they refunded the premiums. So we did not get a financial windfall. It's not, well, we keep your premiums and then zero. So we did refund her premiums. Oh, if this misstatement of age had reduced the available payout from the policy to $1, it would have been OK. But since the number is zero, it's not. And that's the gray area. Is it $1? Is it $100? Is it $1,000? I can't, based on the court's ruling and the reliance on the Amica case, we would have said, well, you get $1 and not a refund of your premiums. I can't believe the court would not also reach the same decision. And that's the gray area. And that's why there's an exception. We have this issue, is what is the minimum amount? If any, there must be some floor the trial court must have been thinking of that they would have gone the other way. And the plain language of the statute does not provide for that exception. It just says, plain language of the statute, if there's an understatement of age, you apply the real age to determine the benefits payable. Was the Amica case an outlier? I believe so. Even the Amica case in footnote number six of the opinion says the weight of authority is that the incontestability clause does not bar the misstatement of age provision. And the reason being is that, one, it's a more specific provision than the general incontestability. The incontestability clause can cover a lot of factors. Misstatement of age only covers one. And also, you're applying the terms of the contract. And it's not a rescission. It's not a nullity. There are treatises that, in fact, accept your view of the matter. Isn't that right? Correct. And we've cited those in our brief. And what is the strongest case for your position? The strongest case would be New York Life Insurance Company on the fact basis versus Hollander. It's a 1951 California Supreme Court case. OK. And the court cited this in order, but not for the reason that really happened. I wondered about what would go on. Just briefly, kind of the same situation we have here. The insured purchased a $5,000 death benefit policy. But also, as part of the policy, was a disability benefit of $50 a month. But you had to submit evidence of your disability before age 65. He said he was born in 1886 in Russia. And he got disabled and submitted his disability claim when he was 64. So like this case, it later turned out that his certificate of naturalization and some other US government documents, such as his draft records, showed him to be two years older. So in that case, they said, applying the misstatement of age provision, no disability benefits. That's it. And the court mixed it up, because they also lowered the $5,000 policy. But the court focused on that and not on the disability payments were cut off, were not paid out because of the misstatement of age provision. So that's the strongest case. Another case, not exactly, is the Wayside Farms, which is the Seventh Circuit Court of Appeals. There you had an Ohio statute which said that an insurance company could not challenge an incorrect answer on the application unless it could show that there was no way it could have done its due diligence to find out the truth, find out the real answer. Then it also had a misstatement of age. The Seventh Circuit said, no, the misstatement of age is not barred by this false statement in contestability, because again, it's a specific provision. It admitted that there's a conflict between the two statutes, just like there's a conflict between the contestability provision and the misstatement of age in the Minnesota statute. But when there's this conflict in the statutory scheme, the Seventh Circuit said you go with the specific, more specific provision prevails, which is the misstatement of age provision. Why couldn't there be a limit implied on the misstatement of age? That's basically . . . Assertion from the other provision of incontestability. That's a legislative, that's basically doing legislation. I'm sorry? If you're saying, if I understand your question, you're saying why can't it be implied that there's a certain limit on the misstatement of age provision? The limit that's in the incontestability clause, two years or whatever it is. But under the court's order, it's like, no, and the court admitted . . . I understand, I'm just, this is a hypothetical. I mean, you could reconcile the two that way, couldn't you? I don't see how, unless, I don't see how you could, because, unless I'm not understanding the question, but if you're saying that the court could say, imply that, well, the misstatement of age provision prevails except when the payment out is zero. I mean, you're basically, again, that's, you're making, you're passing, you're changing the statute is the problem then, and you're reading into the statute rather than following the plain language. And I think then you're, the court would be basically legislating, if I understand your question. I'll save the rest of my time for rebuttal then. Very well. Thank you. May it please the court, counsel. Mr. Whitley, is it? Yes. You may proceed, sir. Thank you. May it please the court, counsel. Jason Whitley, I represent the plaintiff, Mary Yang, and appellee in this matter. The appellant's argument is essentially an exercise in putting form over substance. Whether it's a misstatement or an intentional willful misrepresentation, the result has to be the same. If it's a misstatement of age situation, the appellant has completely ignored the application of 61A.11, which provides that if there is not a medical examination, then the application and the representations as to age, physical condition, and family history are binding upon the insureds. There was no medical evaluation in this case. There's a representation that there was a paramedical examination, which is at the joint appendix page 109, but it's not a medical examination or would not have the preface para. In addition to that, the paramedical examination indicates that the applicant's date of birth was the 1943 birth date. So they found through their underwriting process with a paramedical examination that the birth date was the 1943 date. So if 61A.11 is applicable, which it has to be to a misstatement of age situation, the only exception to that would be under 61A.11 where it references this doesn't count for a willful misrepresentation. Well, if it's a willful misrepresentation, which when I said this is an exercise in putting form over substance, farmers in this case has so thoroughly tried to avoid saying that we are rescinding the policy based on misrepresentation because they want to avoid application of the incontestability provision. However, when we brought up in rebuttal 61A.11, then they switched gears and says, well, it was a willful misrepresentation, and therefore that statute does not apply. I think the lower court judge clearly saw through this and simply came to the conclusion that it doesn't matter whether it's a misrepresentation or a misstatement because operation of law would result in this policy being void ab initio. As my colleague admits, there is no basis for this policy to have ever been issued under farmers' own rules, and therefore there is no policy. And to try and artfully articulate that we're just calling it a misrepresentation completely ignores the requirements of the incontestability provision and the purpose behind it as the lower court judge articulated in her memorandum decision. But I really can't stress the importance of the application of 61A.11 insofar as there was no medical examination in this case, and therefore, and I'll quote, the statements made in the application as to age, physical condition, and family history of the insured shall be valid and binding upon the company unless willfully false or intentionally misleading. That statute has to be squared with the misstatement of age statute, and you can't have it both ways, and farmers would like to have it both ways, and that's why it seems that all of their arguments here are a moving target. If it's this, they say no, but then if it's this, then they say it's this, but it can't be, it's neither one. So as a judge articulated in her decision, there's only three things that can happen here. Either the age was correctly stated, it was intentionally misstated, or it was accidentally misstated. No matter which one of the three it is, there has to be coverage in order to square all of the different applicable statutes and policy provisions. The Amica case is the applicable case as the lower court indicated. It's out of this circuit. It establishes, basically, it's really indistinguishable from the facts that we have here. When you have a policy which would be rendered void, no benefit to the insured as a result of the application of a misstatement of age provision, then you are really, in effect, contesting the policy itself. And as counsel indicated, this policy would never have been issued if the 1933 birth date had been used on the application because it was impossible to give the policy. And so this is really a revocation or an invalidation of the policy that was written. She received no benefit from it whatsoever. They did offer, they did return the premiums, correct? They did return the premiums. So they're reading this as a, they're saying it's a, as I understand the argument, it is a policy in effect where we're returning your premiums and you get zero applying the misstatement of age. Well, a life insurance policy that you take out and pay premiums on for 12 years and then subsequently come to learn that you actually got zero for it, only the refund of your premiums is not an insurance policy, as it can be understood in any rational setting. To think that, give me the dollar, counsel talked about where is that gray line. I don't know if it's $1 or $1,000, but the point of this fact in this case is that it was zero. She got nothing for paying premiums for 12 years. And that, you know, brings me back full circle to the Pembroke decision, which I cited in the reply brief, which puts some burden on farmers to accurately examine this stuff. And it's the whole idea behind the incontestability provision, that to issue a policy to an individual and then decades later, come back and try and argue that they get zero is really unfair. And that's the whole point of the incontestability clause, which says if you don't do your homework, well, then that's your own fault. And in this case, farmers didn't do their homework. They didn't have a medical examination. They had a paramedical examination, which actually did find, as I said, JA page 109, that she had a 1943 birth date. So their own in-house investigation supported the application. And then to wait 12 years and come back and say, no, wait, we want to change our minds on that, is... Just to be the devil's advocate for the moment, I'm not suggesting that this is the way the case should come out. But perhaps one of the reasons that age might be more fundamental and therefore not subject to some sort of time limit with respect to raising an objection is that with respect to life insurance policies, age is the very basis and essence of the actuarial computation. Isn't that right? There's no doubt about that, that age is a very... I guess that might be a reason why this kind of misstatement, intentional or otherwise, is carved out of the incontestability clause, as it were. It could be the reason behind the statute existing for the misrepresentation of age or the under-representation of age. However, a willful misrepresentation as to your state of health, if you have an advanced form of disease that would very quickly end your life and you misrepresent that, but you make it for two years, that could be very much more impactful on the underwriting and the actuarial analysis than the misstatement or understatement of age by a decade or by a year or by two years. So to say that age is the one and only criteria that has a special meaning... That's true. It is fundamental, though. Maybe, well... I agree it's fundamental. However, 61A.11 says age, physical condition, and family history. So they put those three together in one swoop, saying that it shall be valid and binding if there was no medical examination. So, as I began, I'll conclude by suggesting that... ..doing anything other than upholding the lower court decision is really putting form over substance in terms of whether it's a misrepresentation, a willful misrepresentation, or an accurate statement as to a real age. The bottom line is the statutes read together, the purpose and intent behind them, and the case law, the most applicable case law, Amica v. Barber, would support the lower court decision. May I...? Of course. So even if, as a matter of hypothesis, we were to disagree with the district court, there's still a question of whether, in fact, the age was misstated, isn't there? I mean, a fact question. That insurance company would still have to prove that on remand. Isn't that right? They would. Certainly, there's been no... But, I mean, they've asked for summary judgment on the age issue, which I gather you disagree with. Well, sure. I mean, clearly, the age that they rely on is indisputably assigned by immigration officials. There's no dispute about that. The 1933 birth date was assigned. Well, anyway, there's a minimum of fact issue that would keep the summary judgment in favour of the insurance company from being entered. Yes, I agree. Well, does anybody know what this person's correct date is, birth date is? Well, I believe so. The documentation that we obtained from Laos... Your brief said that she showed the agent her proper birth certificate from Laos. Has it been determined as of today what her date of birth is or was? July 11th, 1943. That's on her birth certificate. That hasn't been determined. But there was no factual determination on that because it was deemed irrelevant what her birth date is because of operation of the statute. Who has the burden of proof? Wouldn't it be the insurance company who would have the burden to prove the application of the clause? They do. They would have to prove that her age was misstated. Is that correct? I believe so. As an exclusionary provision in the insurance policy, it's their burden to prove the exclusion, which is to prove that she had the wrong birth date on the application. Yes. Thank you. Yeah. As you say, how do you pronounce the name of this case? Pomerinky? Pomerinky. Yeah, that's Pomerinky v. Farmers. I think it was a 1949 case. And if the agent wrote down that age, the company is bound by what the agent wrote down? Is that what the holding of the case is? Yes. Good, bad, or indifferent as far as the accuracy of what the agent wrote down? He was the agent, and he wrote it. And then the paramedical examination in underwriting confirmed it. Under Minnesota law, then, what... I'll put it this way. What duty was there upon the agent to do other than what the agent did here when he accepted this person's allegation of her date of birth? He was provided with her law-abiding birth certificates, and he filled out the application. And according to Pomerinky, which is old, 1949 Minnesota case v. Farmers, they live with that. Very well. Okay. Thank you. Thank you. Thank you. Briefly reply to three points. First of all, I'd like to discuss the statute 61A.11, which is when misstatements don't invalidate a policy, which was referred to at the medical examination. Counsel, I submit, completely misreads this statute, its goal, and it doesn't apply. Basically, quickly, in any claim upon a policy issued in this state without previous medical examination, comma, or without the knowledge or consent of the insured, comma, or in case of a minor without the consent of the legal custodian, statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company unless willfully false. What this statute means is that if I apply for a life insurance policy and I check off, do you have high blood pressure, and I say no, and they don't do a medical exam on me, they are bound by that. What this statute does is prevents the insurance agent company from being negligent or reckless and then being protected by the statement of age provision, being reckless, essentially. Now, the second clause is or with the knowledge or consent of the insured. This age statement was done with the knowledge and consent of the insured. Ms. Yang was there when farmers wrote this policy, when the farmer's agent wrote this policy. She was there. She signed the application that stated her July 1943 alleged birth date. So she, this statute does not apply because of that clause right there. This statute is where if somebody, if I go in to insure my father, and I say he was born in July 1943, and they never verified that with my father, they're bound by that misstatement. If a minor comes in without his legal guardian and says, I was born on such and such a date, and they don't verify that with the legal guardian, then they're bound. But that didn't, or the medical sample I gave, that's what that statute is. And that does not apply here because the medical examination has nothing to do with this. She consented, the insured was there and consented, and signed the application that said July 1943. Second, regarding the burden of proof, counsel said that this is a misstatement of age and an exclusionary provision, and therefore we have the burden of proof. We disagree with that. That's not the issue on appeal here, but we disagree. The case law says it's not an exclusion of coverage. It's just applying the coverage. What would the coverage be if you applied the proper age? So it is not an exclusionary provision, and therefore they have the burden of proof to prove that she was indeed born July 1943. They have the burden of proving the contract is applicable to them. Is that it? Correct. Well, that's something that might be relevant on remand if there is one, but I don't know that we need to decide it if we. That's correct. And finally, regarding her proper date. First of all, she gave the Laotian birth ticket to the agent. He wrote down and she affirmed and signed the July 1943 date. As our case law shows, especially in the Wayside case, the misstatement of age provision does not involve even if that was where the contention was that the insurance broker was indeed negligent in writing down the wrong date. And the court in that ruled that the misstatement of age provision just applies. It doesn't take into account who made the mistake or why the mistake was made. There's no looking at fault or culpability or whether the insurance company should have done due diligence. It's a misstatement of age, and you just apply it pursuant to the statute. That's it. And I guess that's your response to the Pomeranke case, then. Correct. And indeed, the misstatement, that's our response. And that's the case law shows. And there's another one of our case, but the Wayside case and the other case, First Side case, they all say it applies regardless. Thank you. Very well. We thank you, both sides, for the argument. The case is now submitted, and we will take it under consideration.